IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:18-cv-02674-PX |
| | * | |
| CRACKER BARREL OLD COUNTRY STORE, INC., | * | |
| Defendant. | * | |
| | *** | |

## MEMORANDUM OPINION

This disability discrimination case concerns the failure of Defendant Cracker Barrel Old Country Store, Inc. ("Cracker Barrel") to hire Donte Kess, who is deaf, as a dishwasher at its Linthicum Heights restaurant. Pending before the Court is Cracker Barrel's motion for summary judgment. ECF No. 35. The motion is fully briefed and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court denies Cracker Barrel's motion.

### I. Background

The following facts are undisputed. Donte Kess is a high-school graduate with years of experience in the restaurant industry. *See, e.g.,* ECF No. 37-2 (resume listing experience in food preparation and dishwashing at Romano's Macaroni Grille, Corner Bakery, and The Oregon Grille). Cracker Barrel operates restaurants and retail stores throughout the United States, including one in Linthicum Heights, Maryland. ECF No. 35-2 ¶ 3.

On June 1, 2016, Kess applied for an advertised dishwasher position with Cracker Barrel's Linthicum Heights restaurant using the company's online application system. ECF No. 37-2; ECF No. 35-2 ¶ 6. On the same day that he applied, Kess received from Cracker Barrel a confirmation of receipt his application. ECF No. 35-2 at 11.

On June 13, 2016, Susie Trader, the acting Senior Associate Manager of Cracker Barrel's Linthicum Heights restaurant, emailed Kess an invitation for an interview. ECF No. 37-3 at 2; ECF No. 35-2 at 12. The email directed Kess to call the restaurant to schedule the interview. *Id.*

Cracker Barrel contends that from this point until the filing of Kess' claim with the EEOC, no one from Cracker Barrel heard from Kess. ECF No. 35-2 ¶¶ 8–11. Kess, however, attests that on the same day he received the offer to interview, he traveled an hour via public transportation to a Workforce Technical Center to use their videophone services so he could schedule an interview. ECF No. 37-1 at 15–16. The Center's video relay interpreting service allows a caller such as Kess to use sign language to communicate with the interpreter; the interpreter then simultaneously speaks via telephone to the recipient of the call. *See* ECF No. 37-1 at 12–15. The use of this videophone service alerts the recipient of the call that the caller is hearing impaired. *See* ECF No. 35-3 at 22.

During this call, Kess communicated with Cracker Barrel's General Manager, Joanne Bodley.[1] ECF No. 37-1 at 12–13; ECF No. 37-3 at 22. Bodley asked Kess how he communicates with co-workers given his hearing impairment. ECF No. 37-1 at 34–35. Kess assured Bodley that he communicates with either sign language, writing on paper or spelling with his fingers, and that communication has not presented a problem for him in prior jobs. *Id.* at 35. Kess also told Bodley that he still keeps in touch with some of his previous co-workers. *Id.* Bodley scheduled Kess for an interview with Trader for June 16, 2016 at 4:15 p.m. *Id.* at 17, 27.

On his interview day, Kess commuted ninety minutes via public transportation to the Linthicum Heights Cracker Barrel restaurant and arrived well-before his appointment time. *Id.*

---

[1] Bodley passed away before the EEOC filed this action. ECF No. 35 at 4 n.2.

Upon his arrival, he wrote a note to the cashier that he was there for his interview. *Id.* at 19. Thirty minutes later, Candy Rogers, a senior associate manager, approached Kess. *Id.* at 26; ECF No. 37-3 at 2. According to Kess, Rogers "looked nervous, her body language was strange." ECF No. 37-1 at 20. Kess wrote Rogers a note that he was there for an interview with Trader. *Id.* Rogers, in response, told him that Trader was not there. *Id.* Kess asked Rogers to write down her name, which she did. *Id.* She then walked away. *Id.*

After a few minutes, Kess left the restaurant and headed to a library near his home. ECF No. 37-1 at 27–29. At the library, he sent the following email to Trader:

> Good afternoon. I went to Cracker Barrel today for interview today at 4:15 p.m. I was told by Candy that you were not there. I also asked for general manager. I seem that she does not concern about then speechlesd [sic] with me after that. It doesn't happened [sic] to me in my life. Donte

ECF No. 37-1 at 29–30; ECF No. 37-5.

The next day, on Friday June 17, 2016, Kess traveled again to the Center and called the Linthicum Heights Cracker Barrel three separate times. ECF No. 37-1 at 23, 30–31. Each time, the Center's interpreter communicated to Kess that the call was answered at Cracker Barrel, put on hold, and then disconnected. *Id.* On Monday, June 20, 2016, Kess returned to the Center and called Cracker Barrel again. *Id.* at 30. This time, someone whom the interpreter believes identified herself as "Chastity" answered. *Id.* at 23, 32–33. Kess explained to Chastity what had occurred on the previous Thursday, gave Chastity his email address, and asked that she leave a message with Bodley. *Id.* No one from Cracker Barrel ever contacted Kess in response. ECF No. 37-1 at 23, 33.

On July 22, 2016, electronic records reflect that Rogers removed Kess from consideration for the position. ECF No. 37-8. The line in the electronic record reads: "not going to hire; reject. Do not hire. Incomplete data." *Id.*

3

Kess filed a formal charge with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title I of the Americans with Disabilities Act ("ADA") by Cracker Barrel. ECF No. 1 ¶ 7. On August 29, 2018, the EEOC, on behalf of Kess, initiated suit in this Court, alleging that Cracker Barrel violated Sections 102(a) of Title I of the ADA, 42 U.S.C. §§ 12112(a) by refusing to consider Kess for employment on account of his hearing impairment. ECF No. 1 ¶ 13.

**II.** **Standard of Review**

Summary judgment is appropriate when the court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex*, 477 U.S. at 322.

**III. Analysis**

The EEOC maintains that Cracker Barrel violated Title I of the ADA in refusing to hire Kess because he is hearing impaired. The ADA forbids employers from intentionally discriminating against persons with disabilities. 42 U.S.C. § 12112(a)-(b). *See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir. 1995), *as amended* (June 9, 1995), *as amended* (Mar. 14, 2008). Discrimination claims brought pursuant to the ADA are subject to the *McDonnell Douglas* burden-shifting framework. *Id.* at 58. Under this framework, the EEOC must first establish a failure-to-hire *prima facie* case of disability discrimination with evidence demonstrating that (1) Kess qualifies as a person with a disability; (2) he applied for a vacant position; (3) for which he is qualified; and (4) his disability played a motivating role in Cracker Barrel's refusal to hire him. *Martell v. Sparrows Point Scrap Processing, LLC*, 214 F. Supp. 2d 527, 528 (D. Md. 2002) (citing *Baird v. Rose,* 192 F.3d 462, 466, 470 (4th Cir.1999)); *Allen v. Johnson*, No. DKC 09-1503, 2010 WL 2431022, at *3 (D. Md. June 10, 2010). If the EEOC makes a *prima facie* case, the burden then shifts to Cracker Barrel to produce evidence that it did not hire Kess for a legitimate, nondiscriminatory reason. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 575 (4th Cir. 2015). If Cracker Barrel meets its burden of production, the burden shifts back to the EEOC to show that the proffered legitimate reason was mere pretext. *Id.*

As to the first element of the *prima facie* case, Kess has a recognized disability under the ADA. *See* 29 C.F.R. § 1630.2(i); *Bryant v. Better Bus. Bureau,* 923 F.Supp. 720, 743 (D. Md. 1996) (holding that "hearing loss approaching deafness" is a disability under the ADA). As

to the second and third elements, record evidence amply demonstrates Kess was qualified for the open dishwasher position, for which he applied, at the Linthicum Heights Cracker Barrel. *See* ECF No. 35-2 ¶ 11; ECF No. 37-2; ECF No. 35 at 9; No. 35-2 at 11. The parties vigorously dispute, however, the sufficiency of evidence as to the fourth element—whether Kess was subjected to an adverse employment action.

Cracker Barrel principally contends that it did not "refuse" to hire Kess, but merely "delayed" its consideration of hiring. *See* ECF No. 35 at 9. Cracker Barrel may be correct that a mere delay in hiring or promotion does not constitute an adverse employment action. *See, e.g., West v. New Mexico Taxation & Revenue Dep't*, 757 F. Supp. 2d 1065, 1098 (D.N.M. 2010) ("Mere delay, without more, is not enough to establish an adverse employment action"); *MohanKumar v. Kansas State Univ.*, 60 F. Supp. 2d 1153, 1162 (D. Kan. 1999), *aff'd*, 221 F.3d 1352 (10th Cir. 2000) (holding that a department head's opposition to hiring of plaintiff, which allegedly resulted in a three-month delay, did not constitute an adverse employment action); *Crosby v. Sunoco, Inc.*, No. MO:16-CV-00142-RAJ, 2018 WL 1602961, at *10 (W.D. Tex. Jan. 4, 2018) (holding that "merely intermediate decisions or temporary delays leading to [defendant's] ultimate decision to hire plaintiff do not constitute actionable adverse employment actions."). However, when viewing the record evidence most favorably to the EEOC, a reasonable juror could conclude Cracker Barrel did not "delay" hiring Kess—it took Kess completely out of the running for employment. ECF No. 37-8.

Within two weeks of applying to Cracker Barrel, Kess received an invitation to interview and scheduled the interview. ECF No. 35-2 at 11–12; ECF No. 37-1 at 17. Because Kess used the Center's videophone service, Bodley, the restaurant's General Manager, learned that Kess is deaf. ECF No. 35-3 at 22. Immediately after, the supervisors stonewalled Kess. Trader did not

keep her interview with Kess and his numerous follow-up phone calls went unanswered. Then, Cracker Barrel unilaterally took Kess out of consideration for the job, noting plainly "do not hire." ECF No. 37-8. Although Cracker Barrel argues that it removed Kess because he did not follow through on his application, ample evidence suggest otherwise, making this a dispute of fact best left for resolution at trial. Likewise, that Cracker Barrel offered to interview Kess only *after* he filed his discrimination charge with the EEOC, ECF No. 35-2 ¶ 11, may be viewed by the factfinder as a cover-tracks maneuver rather than mere forgivable "delay." Because genuine issues of material fact exist as to the fourth element of the *prima facie* case, summary judgment is denied on this ground.

Cracker Barrel alternatively argues that no evidence reflects that Kess' disability played a role in Cracker Barrel's non-selection of Kess. Again, the Court disagrees. Before Cracker Barrel knew that Kess was hearing impaired, it extended Kess a job interview, thus reflecting it recognized Kess' qualifications. ECF No. 37-5. Cracker Barrel, through Bodley, then learned that Kess was hearing impaired and its enthusiasm for Kess as a future employee disappeared. ECF No. 37-1 at 12–14. Kess was kept waiting when he arrived for a pre-scheduled interview, ECF No. 37-1 at 26, turned away without explanation, *id.* at 20, and never rescheduled despite his repeated attempts to do so. *See* ECF No. 37-3; ECF No. 37-1 at 23, 30, 31. In the end, Cracker Barrel ended Kess' employment search with a simple but telling electronic record entry: "do not hire."[2] ECF No. 37-8. With this constellation of facts, a reasonable juror could conclude that Kess was denied employment because he is hearing impaired.

---

[2] Rogers contends that another employee, to whom she gave her login credentials, was likely responsible for removing Kess from employment consideration. ECF No. 38-4 at 10. The jury will be free to either accept or reject Roger's assertions at trial.

A genuine factual dispute similarly precludes summary judgment as to pretext. *See Jacobs*, 780 F.3d at 575. Cracker Barrel argues that its removing Kess from consideration amounts to a simple "mistake." Although, a genuine mistake may provide a legitimate reason for an adverse employment action, *see generally Gibson v. Fluor Daniel Servs. Corp.*, 281 Fed. Appx. 177, 179 (4th Cir. 2008), ample counter evidence demonstrates that the "mistake" was in fact pretext for refusing to hire Kess because he is deaf. In a matter of days, Cracker Barrel went from responsive and eager to interview Kess, to radio silent upon learning that he is deaf. Its supervisors did not interview Kess as scheduled, ignored his repeated efforts to reestablish communication, never attempted to reschedule the interview, and ultimately chose to close his application. That Kess' experience deviated so significantly from Cracker Barrel's routinized procedure for selecting its employees contributes as well to a genuine dispute as to whether its odd treatment of Kess amounted to pretext. *See* ECF No. 37-6 at 6 (Rogers detailing standard procedure for interview). On this record, the Court must deny Cracker Barrel's motion for summary judgment. A separate Order follows.

| 1/16/2020 | /S/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |